(No. 5449.   December 24, 1930.)

DANIEL ARANGUENA, Respondent, v. W. H. BODEN-HEIMER, Appellant.

[294 Pac. 519.]

L. M. Lyon and Wm. M. Morgan, for Appellant.

Karl Paine, for Respondent.

LEE, J.—Plaintiff and respondent, Aranguena, sued defendant and appellant, Bodenheimer, upon an open account, claiming a balance of $1,868.45.  Appellant denied the indebtedness and set up three counterclaims totalling $1,322.87,

of which sum recited credits of $1,046.20 left a demanded balance of $276.67. By stipulation the cause was tried without a jury. The court found in respondent's favor for $1,507.83 and against appellant on all three counterclaims. From the consequent judgment, this appeal was taken. Appellant contends that there is no evidence to support the findings that he owed respondent the sum determined and that his second counterclaim was without foundation. No objection is raised to the findings on the first and third counterclaims: hence they are out of the case.

The second counterclaim demanded the sum of $379.61 due for wares, labor and money furnished, performed and paid by appellant at respondent's request. Upon this claim, the court found *in haec verba* that "This defendant has not at any time furnished or delivered to plaintiff, goods, wares or merchandise, or performed or caused to be performed for plaintiff labor, or paid or caused to be paid to plaintiff, or to anyone else, any sum of money, as alleged in defendant's second affirmative defense and counterclaim, *or otherwise.*" (Italics ours.) And it found that "the whole amount and aggregate value of the items of said account is $4,016.71, no part of which has been paid except the sum of $2,508.88, the said balance of $1,507.83 being due, owing and unpaid as aforesaid, after deducting all just credits and offsets with interest."

We admit perplexity at the outset. Respondent's pleadings conceded appellant a credit of $2,148.26, yet the trial court, after finding that appellant had at no time furnished respondent merchandise, labor or money, found that he had paid him, $2,508.88 or $360.62 more than respondent conceded. In his bill of particulars, respondent claimed an original account of $4,016.71. This account, when offered in evidence, was rejected, yet the court found that all items in it were correct, and this, after sustaining appellant's objection to the introduction of respondent's books of account and his testimony touching the correctness of them.

This suit was commenced November 27, 1928. From the

record, it appears that on October 22d and 23d preceding, conversations were had between the immediate parties, regarding the payment of the account, at which time respondent claimed about $1,900: his amended complaint filed subsequently fixed that balance as heretofore stated, at $1,868.45. Significant parts of the conversations as testified to by respondent were:

"I stated to him that I needed the money to start out a business down here pretty close to Shoshone, and he says he haven't got the money to pay me but he will put down some kind of a mortgage against the money. . . . .

"Well, he says that he will sell that Hudson car down here for $1000, and he will pay me out of that $1,000, $500 cash and the balance to let this mortgage on these lots and parts."

Asked what appellant had to say to the $1,900 balance claimed, respondent testified: "He says he thinks I didn't give him enough credit, and he got some checks I didn't give him credit, and I told him if he finds his checks that I give him credit if he could show me the checks."

On cross-examination, in response to the question: "Did you and Bodenheimer go over the books to see how much he owed?" he answered: "Yes, sir." To the next question: "Did he tell you then that you had not given him credit for some money he had paid you?" he answered: "Well, he says he thought he got some checks to credit him up and I told him 'if you find it out and you bring them up tomorrow to Boise and I give you credit for the checks all the checks you bring up to Boise.' " All this was corroborated by the witness, Eschavarri, who testifying as to the balance contemplated by the parties, a balance subject to any uncredited checks appellant might produce, swore that after appellant had said "something about the rent something, about a little interest something," that "after subtracting it, it was over $2,000, I don't remember the dollars and cents, but there was a fraction over I don't remember how much, then they took that off, it was down to nine-

teen hundred something, I don't remember, so he was willing.''

This was surely competent evidence of an approximate ·indebtedness appellant was willing to pay $500 cash on besides giving mortgage·security for the balance. However, there was no motion for nonsuit: and appellant took the stand. There, he disputed only a restricted number of ·items, items taken directly from respondent's bill of particulars. The bill had been served upon his attorney, and he, appellant, had examined it. That, during the conversations with respondent and the latter's attorney, he had never raised any objection to the original charges but had confined his objections to omitted credits only, convincingly appears from his own testimony on cross-examination:

''By Mr. Paine:

''Q. Mr. Bodenheimer, let me ask you, isn't it a fact that you then and there asked me to draw a mortgage for $1500?

''A. No, I didn't ask you.

''Q. And if you didn't say that you thought you were entitled to some credits and that you had looked among your checks and had not found all the checks which you thought that you had and you wanted time to look them up?

''A. I told you I wouldn't do anything until I found out about those checks.

''Q. I am asking you about this. Answer my question. Did you not say you wanted a chance to look again for these checks?

''A. Yes, I did.

· ''Q. And did you not say at that time that you would give a mortgage then and there and wanted me to draw it for $1500 and you would then sell the Hudson car and pay the difference between $1500 and the balance due.

''A. I said I would pay the difference if there was any coming.

''Q. After finding the credits, isn't that a fact?

''A. Something to that effect, yes. . . . .

"Q. Did you agree then and there to have the abstract brought down to date?

"A. Yes.

"Q. And to hunt up these checks?

"A. And hunt up these checks and the credits that I had coming.

"Q. And return to the office the next Friday, the following Friday, did you not?

"A. Yes.

"Q. And execute the mortgage?

"A. I told him if the credits was all right."

Under the second counterclaim, appellant submitted uncredited checks in the sum of $126.60, none of them questioned. This with the sum of $244.02 in said counterclaim demanded and which in his bill of particulars he admitted respondent had already given him credit for, makes a total of $370.62, $10 more than the identical, additional credit the trial court allowed him. Where the court found the $234.02 necessary to raise the $126.60 credit to $360.62, the final credit allowed, we have been unable to discover: the record lends no guidance. It had to be found as a credit, since the court specifically found that respondent's original charge items were all correct. Search as we may, we find no evidence supporting it.

One thousand five hundred dollars of the indebtedness appellant admitted on cross-examination he had theretofore agreed to secure by mortgage, and pay any excess balance remaining after deduction of uncredited checks, a deliberate recognition of $1,500 due and possibly more. At the time of these conversations and agreements, he knew that the balance contended for was in the neighborhood of $400. To that balance, he made no objection except that it failed to show credit for a number of checks he alleged he had given respondent. Of uncredited checks, he produced a number totalling $133.99. Respondent disputed one only, leaving unquestioned the credit of $126.60. The judgment against appellant was for $1,507.83, showing, as before stated, a fur-

ther credit of $234.02, a sum not established by the checks submitted.

Although the finding on his second counterclaim was inconsistent and wholly irreconcilable with the evidence, the judgment shows that he was awarded credit far in excess of the sum demanded in said claim, since $244.02 thereof had already been credited him in the account, as disclosed by the bill of particulars. Had he been prejudiced by the judgment, we would not hesitate to reverse it on this finding alone, and remand the cause for new trial. But, as we view it, he has profited by the judgment as it stands, and cannot complain of the route adopted by the trial court in awarding it.

Judgment affirmed; costs to respondent.

Givens, C. J., and Varian and McNaughton, JJ., concur.